IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| MARIANNE BRUHN-POPIK, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 3:13CV850-HEH |
| ) | |
| KISUKA KILUMBU, *et al.*, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION
(Defendants' Motions to Dismiss)

This is an action seeking ten million dollars in damages under the Federal Torts Claims Act ("FTCA"), 28 U.S.C. § 2671, *et seq.*, arising from a sexual encounter between the Plaintiff and Defendant Kisuka Kilumbu ("Kilumbu") in 2009. The case is presently before the Court on two motions to dismiss all counts of the Complaint—one filed by Kilumbu pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure (ECF No. 12), and the other filed by the Government pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure (ECF No. 10). The underlying issues have been thoroughly briefed by the parties. The Court will dispense with oral argument because the facts and legal contentions are well framed in the materials before the Court and argument would not aid in the decisional process.

### I. BACKGROUND

In 2009, Plaintiff was employed as a civilian contractor at Fort Lee, Virginia. (Compl. ¶ 8, ECF No. 1.) During that time, Plaintiff's ex-husband was seeking an

annulment of their Lutheran marriage through the Roman Catholic Diocese of San Diego. (*Id.*) Plaintiff required an "advocate" to assist her in the annulment process. (*Id.*) The Catholic chaplain at Fort Lee at the time was Kilumbu, a Captain in the United States Army. (*Id.*) Kilumbu agreed to serve as Plaintiff's advocate in the annulment process and his appointment as her advocate was approved by the Diocese of San Diego. (*Id.* ¶ 9.) In the course of this relationship, Plaintiff and Kilumbu engaged in "wide-ranging and intimate communications." (*Id.* ¶ 10.)

As counseling continued and trust was established, Kilumbu learned that Plaintiff had been sexually abused on multiple occasions between the ages of six and sixteen by four different men—two stepfathers and two neighbors. (*Id.* ¶¶ 10-11.) Plaintiff also disclosed that her ex-husband had abused her and was unfaithful during their marriage. (*Id.* ¶ 11.) Kilumbu learned of Plaintiff's "profound and intense difficulties . . . in resisting sexual abuse." (*Id.* ¶ 12.) Specifically, Plaintiff alleges that Kilumbu learned that Plaintiff's sexual abusers occupied positions of authority over her and her reaction to abuse was to "abandon resistance in order to allow the abuser to 'get it over with.'" (*Id.*)

One evening in late June 2009, Kilumbu visited Plaintiff's apartment complex to complete paperwork relating to the annulment. (*Id.* ¶ 13.) Both parties drank during the visit. (*Id.*) After some intimate conversations and dancing, Kilumbu kissed Plaintiff. (*Id.* ¶ 13-14.) They then moved to her bedroom where they had consensual sexual intercourse. (*Id.* ¶ 15-16.) Kilumbu left Plaintiff's apartment later that night. (*Id.* ¶ 19.)

Plaintiff alleges that, though the sex was consensual, as a result she has suffered severe emotional and psychological distress. (*Id.* ¶ 22.) She also alleges that she

2

sustained bodily injury ("genital soreness") and was forced to leave her position at Fort Lee. (*Id.*)

Plaintiff reported the incident to the United States Army for investigation which resulted in a formal charge against Kilumbu for "False Swearing." (*Id.* ¶ 20.)

## II. STANDARD OF REVIEW

### A. 12(b)(1) Motion

"The Plaintiff has the burden of proving that subject matter jurisdiction exists," *Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999) (citation omitted)., "because the party who sues the United States bears the burden of pointing to . . . an unequivocal waiver of immunity." *Williams v. United States*, 50 F.3d 299, 304 (4th Cir. 1995) (citation omitted) (internal quotation marks omitted). Absent an express waiver, the United States enjoys immunity from all suits. *Welch v. United States*, 409 F.3d 646, 650 (4th Cir. 2005). As a jurisdictional question, a motion pursuant to FRCP 12(b)(1) is the appropriate vehicle for the court to consider whether sovereign immunity bars the claim. *See Williams*, 50 F.3d at 304 (citation omitted) (finding that when it is clear that the United States is not liable, dismissal under Rule 12(b)(1) is appropriate, rather than by granting summary judgment). A motion pursuant to 12(b)(1) should be granted "only if the material jurisdictional facts are not in dispute." *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991).

### B. 12(b)(6) Motion

Motions to dismiss under Rule 12(b)(6) are reviewed under the now familiar standard articulated by the United States Supreme Court in *Bell Atlantic Corp. v.*

3

*Twombly*, 550 U.S. 544, 570 (2007). "A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint . . . it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). To survive a Rule 12(b)(6) challenge, a complaint must contain sufficient factual information to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *see also* Fed. R. Civ. P. 8(a)(2) ("A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief."). Mere labels and conclusions declaring that the plaintiff is entitled to relief are not enough. *Id.* at 555. Thus, "naked assertions of wrongdoing necessitate some factual enhancement within the complaint to cross the line between possibility and plausibility of entitlement to relief." *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (citing *Twombly*, 550 U.S. at 557) (internal quotation marks omitted).

A complaint achieves facial plausibility when the facts contained therein support a reasonable inference that the defendant is liable for the misconduct alleged. *Twombly*, 550 U.S. at 556; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This analysis is context-specific and requires "the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. The court must assume all well-pleaded factual allegations to be true and determine whether, viewed in the light most favorable to the plaintiff, they "plausibly give rise to an entitlement to relief." *Id.*

4

## III. ANALYSIS

### A. Government's 12(b)(1) Motion

In its 12(b)(1) Motion, the United States argues that it is entitled to sovereign immunity barring all of Plaintiff's claims. While the FTCA provides a limited waiver of immunity for claims that arise from negligent and wrongful acts of a government employee, those acts must be committed within the scope of their employment. 28 U.S.C. § 1346(b)(1). In the case of a member of the armed forces, such scope means acting "in the line of duty." 28 U.S.C. § 2671. The state law doctrine of *respondeat superior* measures whether an act or omission falls within the "line of duty" and limits the liability of the Government in the same manner and to the same extent as a private employer. *Williams v. United States*, 350 U.S. 857 (1955); *United States v. Eleazer*, 177 F.2d 914, 918 (4th Cir. 1949).

> Under Virginia *respondeat superior* doctrine,
>
> an act is deemed to be within the scope of the employment if "(1) it be something fairly and naturally incident to the business, and (2) if it be done while the servant was engaged upon the master's business and be done, although mistakenly or ill-advisedly, with a view to further the master's interests, or from some impulse or emotion which naturally grew out of or was incident to the attempt to perform the master's business, and did not arise wholly from some external, independent, and personal motive on the part of the servant to do the act upon his own account."

*Sayles v. Piccadilly Cafeterias, Inc.*, 242 Va. 328, 332 (1991) (quoting *Tri-State Coach Corp. v. Walsh*, 188 Va. 299, 307 (1948); *Davis v. Merrill*, 133 Va. 69, 77 (1922)). However, the willfulness or wrongful personal motive of the employee cannot on its own excuse the employer's liability, but rather liability depends on whether the act was within

5

the scope of the employment duties and occurred as he executed the services for which he was hired. *Commercial Bus. Sys., Inc. v. Bellsouth Serv., Inc.*, 249 Va. 39, 45 (1995). An employer incurs no liability when the employee departs from workplace duties or functions and embarks on a wholly independent action. *Blair v. Defender Servs.*, 386 F.3d 623, 628 (4th Cir. 2004); *accord Commercial Bus. Sys., Inc.*, 249 Va. at 46.

As alleged in the Complaint, the relationship between the parties was established as a result of Kilumbu's employment with the Army. Kilumbu visited Plaintiff's apartment for the purpose of completing paperwork related to the annulment process. (Compl. ¶ 13.) On the scant facts provided, Kilumbu, at least in part, was functioning in his role as an Army captain and chaplain while he was present in Plaintiff's residence. Without more factual context, the Court is unable to make a definitive determination at this stage. The Government's assertion that Kilumbu was acting wholly independently in his actions that evening is compelling if proven, but the Court's analysis at this point is constrained to the four corners of the Complaint. The present record precludes a finding of immunity for the United States at this stage of the proceedings.

### B. Government's and Kilumbu's 12(b)(6) Motions

Though the motions were filed separately, the Court will address them together, as the analysis involves similar controlling issues.

To state a claim of negligence, as alleged in Count One, the Complaint must set forth facts demonstrating the existence of a legally recognized duty. "A plaintiff who seeks to establish actionable negligence must plead the existence of a legal duty, violation of that duty, and proximate causation which results in injury." *Delk v. Columbia/HCA*

*Healthcare Corp.*, 259 Va. 125, 132 (2000) (citations omitted). Here, Plaintiff maintains that Kilumbu, by virtue of his advocate role, owed her a duty of care which he violated through exploiting his knowledge of her past sexual abuse and manipulating Plaintiff into engaging in sex with him. She further contends that his actions resulted in "severe emotional and psychological distress and bodily injury." (Compl. ¶ 25.) The relationship between a government-employed, religious advocate and those seeking his services appears novel and undefined—the breadth of that relationship and associated duties are not yet clear in this case. Wholly aside from the possible ecumenical implications of the relationship,[1] the Court finds that a sufficiently plausible duty has been established for Count One to survive the Rule 12(b)(6) scrutiny.

Similarly, with respect to Count Four, a fiduciary relationship must first be alleged before a claim for breach of fiduciary duty can advance. "Evidence of advice and counsel in business matters involving a certain degree of trust is necessary to show a fiduciary relationship." *Oden v. Slach*, 237 Va. 525, 534 (1989) (citation omitted). Having found a fiduciary relationship in a broad array of settings, the Supreme Court of Virginia looks to the dynamics of trust and the transactions carried on between the parties, regardless of the degree of formality in the relationship. *See Martin v. Phillips*, 235 Va. 523, 527-28 (1988). Plaintiff asserts that Kilumbu served as her "counselor, advocate, and fiduciary," and that his egregious misconduct in the course of the

---

[1] The First Amendment prohibits the courts from intermeddling in disputes of religious bodies and personnel, but that protection and shield does not extend to controversies involving statutory or common law issues such as those before the Court. *See EEOC v. Roman Catholic Diocese*, 213 F.3d 795, 800-01 (4th Cir. 2000). The claims set forth in this case are such that the Court finds no prohibited entanglement in its applying the general principles at issue.

relationship resulted in lasting injury and distress, thereby constituting a breach of such duty. Presently the allegations set forth are sufficient to plausibly establish that a fiduciary relationship existed, however ultimately the Court awaits the development of a more fulsome record to fully determine the contours of the relationship at issue. Therefore, the motions are denied as to Count Four.

In a similar manner, the Supreme Court of Virginia defines a confidential relationship as one "that is not confined to any specific association of the parties; it is one wherein a party is bound to act for the benefit of another, and can take no advantage to himself." *Friendly Ice Cream Corp. v. Beckner*, 268 Va. 23, 33-34 (2004) (citation and internal quotation marks omitted). "Trust alone, however, is not sufficient." *Id.* (citation omitted). A confidential relationship arises when a reciprocal relationship is established, and liability attaches when one party has a dependence on the other. *Id.* (citation omitted). Again in this setting, a complete picture of the parties' relationship is not presented on the face of the Complaint. Allegations indicate that Kilumbu was working on behalf of Plaintiff within the annulment process. Plaintiff also asserts that in the course of that relationship, Kilumbu acquired confidential information about her past that he may have used to his personal advantage. Without more facts, however, the Court cannot determine whether the conduct rises to the level of a breach, but finds that the allegations plausibly establish a confidential relationship between the parties. Accordingly, Count Five will proceed.

A claim for intentional infliction of emotional distress turns on four elements: "1) the wrongdoer's conduct was intentional or reckless; 2) the conduct was outrageous or

intolerable; 3) there was a causal connection between the wrongdoer's conduct and the resulting emotional distress; and 4) the resulting emotional distress was severe." *Almy v. Grisham*, 273 Va. 68, 77 (2007) (citing *Womack v. Eldridge*, 215 Va. 338, 342 (1974)). "The term 'outrageous' does not objectively describe particular acts," *id.* (citation omitted), but a wrongdoer is only liable where "the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" *Russo v. White*, 241 Va. 23, 27 (1991) (citation omitted). Furthermore, "[l]iability arises only when the emotional distress is extreme, and only where the distress inflicted is so severe that no reasonable person could be expected to endure it." *Id.* (citation omitted) (internal quotation marks omitted). This standard coupled with the inherent difficulty in proving injury to emotion presents a high bar to succeeding on a claim of intentional infliction of emotional distress, and as a result, it is "not favored" in Virginia. *Almy*, 273 Va. at 77 (citations omitted).

By Plaintiff's own admission, the alleged conduct at issue in this case was a consensual sexual encounter. During Kilumbu's visit to Plaintiff's apartment, the parties drank, danced, had sexual conversations, and kissed, which all eventually resulted in consensual sexual intercourse. As alleged, no facts reasonably demonstrate outrageous conduct, much less conduct that would rise to the level as being regarded as atrocious and utterly intolerable. Additionally, Plaintiff alleges that Kilumbu's actions resulted in her suffering emotional and psychological distress, in addition to physical effects of sexual conduct. These conclusory allegations cannot be said to demonstrate distress so extreme

and severe that no reasonable person could endure it. Plainly, the Complaint does not meet the high bar required to proceed with this claim. Accordingly, Count Two must be dismissed.

Similar to the high threshold for intentional infliction of emotional distress, Virginia recognizes a comparably stringent standard to recovery under negligent infliction of emotional distress. There is no recovery "where conduct is merely negligent, not willful, wanton, or vindictive, and physical impact is lacking." *Hughes v. Moore*, 214 Va. 27, 34 (1973) (requiring a "clear and unbroken chain of causal connection between the negligent act, the emotional disturbance, and the physical injury"). Physical symptoms of anxiety and psychological distress do not constitute physical injuries. *Myseros v. Sissler*, 239 Va. 8, 12 (1990). Rather, it must be clear that the physical impact is a result of the "fright or shock proximately caused by the defendant's negligence". *Id.* at 9 (citation omitted).

Again, Plaintiff's claim fails. Because the only physical injury alleged is "genital soreness" resulting from a consensual sexual encounter, recovery cannot lie. There are scant allegations and conclusions indicating that Kilumbu's actions resulted in emotional distress for the Plaintiff. However, based on the allegations, it cannot be said that Plaintiff's "genital soreness" was a result of any alleged emotional disturbance or distress. Accordingly, Count Three cannot proceed.

For the reasons stated herein, Defendants' 12(b)(6) motions will be granted with respect to Counts Two and Three and denied as to the remaining three claims. An appropriate order will accompany this Memorandum.

/s/
Henry E. Hudson
United States District Judge

Date: Aug 6, 2014
Richmond, Virginia